IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FERNANDA BRITO-MUNOZ and TAMIKA WILLIAMS, on behalf of themselves and all others similarly situated, | : Civil No. 1:21-CV-00903 : : : : |
| Plaintiffs, | : : |
| v. | : : |
| WALMART, INC., | : : |
| Defendant. | : Judge Jennifer P. Wilson |

### **MEMORANDUM**

Before the court is a motion to dismiss the amended complaint in this putative class action case filed by Defendant Walmart, Inc. ("Walmart"). (Doc. 36.) For the reasons that follow, the court will grant the motion.

#### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The named Plaintiffs in this case are Fernanda Brito-Munoz and Tamika Williams (collectively, "Plaintiffs").[1] (Doc. 32, pp. 7, 9.)[2] Plaintiff Brito-Munoz is a Pennsylvania resident who has a daughter who "has suffered skin irritation, dermatitis, and/or allergic skin reaction in the past." (*Id.* ¶ 24.) To care for her daughter, Brito-Munoz alleges that she regularly purchased Parent's Choice Baby

---

[1] Plaintiffs seek to bring a nationwide class action "on behalf of themselves and all other similarly situated United States residents who purchased [select products labeled as hypoallergenic and/or tear-free] from Walmart's retail or online stores." (Doc. 32, pp. 37–38.)

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

1

Wipes and Parent's Choice diapers from Walmart.³  (*Id.* ¶ 22.)  Brito-Munoz claims that these products were labeled as "hypoallergenic," which was "a significant reason for her purchase[]" due to her daughter's history of skin issues.  (*Id.* ¶ 23.)  Similarly, Plaintiff Williams is a resident of California who "has suffered skin irritation, eye irritation, dermatitis, and/or an allergic skin reaction in the past."  (*Id.* ¶ 36.)  As such, Williams claims that she purchased Parent's Choice Baby Lotion, Parent's Choice Baby Laundry Detergent, Parent's Choice Shea Butter Baby Wipes, Parent's Choice Maximum Strength Diaper Rash Ointment, Parent's Choice Wash & Shampoo, and Equate Personal Wipes from Walmart, all of which were labeled as "hypoallergenic."  (*Id.* ¶ 34.)  She alleges that this label was "a significant reason for her purchase[]."  (*Id.* ¶ 35.)  Both Plaintiffs assert that they purchased these products regularly.  (*Id.* ¶¶ 22, 34.)

Plaintiffs claim that contrary to the "hypoallergenic" labels on its products, Walmart's products contain "a significant array and substantial amount of known skin sensitizers (allergens), agents that cause serious skin damage, chemicals that cause serious eye damage lasting longer than 21 days, skin irritants, and eye irritants."  (*Id.* ¶ 8.)  Thus, Plaintiffs allege that "Walmart's body care products . . . were falsely and misleadingly marketed as 'hypoallergenic' (some of which were

---

³ The amended complaint indicates that the "Parent's Choice" brand is one of Walmart's private label brands.  (Doc. 32, ¶ 45.)  Walmart also "makes, markets, and sells Walmart, Equate, Equate Beauty, [and] Great Value" brands as other private label brands.  (*Id.*)

2

also falsely and misleadingly marketed as 'tear-free')" since "all of these products contain skin allergens in an amount known to cause an allergic reaction." (*Id.* ¶¶ 12, 59.) Specifically, Plaintiffs claim that Walmart improperly labels the following products as hypoallergenic and/or "tear-free": 2-in-1 Baby Wash & Shampoo; 2-in-1 Cleanser; Antibacterial Hand Wipes; Anti-Wrinkle Cream; Baby Bath; Baby Laundry Detergent; Baby Lotion; Baby Oil Cream; Baby Powder; Baby Shampoo; Baby Sunscreen Lotion; Baby Wash & Shampoo; Baby Wipes; Bath for Nighttime/Nighttime Bath; Body Wash; Cleansing Towelettes; Daily Moisturizer; Day Cream; Diaper Rash Ointment; Diaper Rash Paste; Diaper Rash Relief; Facial Moisturizer; Facial Scrub; Facial Wipes; Feminine Wash; Feminine Wipes; Kids Sunscreen Lotion; Kids Sunscreen Stick; Lotion; Makeup Remover Towelettes; Moisturizing Lotion; Personal Wipes; Wash & Shampoo; and Wipes.[4] (*Id.* at 15–16.)

Plaintiffs assert that if they knew the products they were purchasing "were not hypoallergenic as promised, [they] would not have purchased these products[,]" although Brito-Munoz states that she would purchase the products if

---

[4] The amended complaint does not indicate that Plaintiffs purchased all of these products. Rather, it is only alleged that Plaintiffs purchased Parent's Choice Baby Wipes, Parent's Choice diapers, Parent's Choice Baby Lotion, Parent's Choice Baby Laundry Detergent, Parent's Choice Shea Butter Baby Wipes, Parent's Choice Maximum Strength Diaper Rash Ointment, Parent's Choice Wash & Shampoo, and Equate Personal Wipes. (Doc. 32, ¶¶ 22, 34.)

"she had no other available options due to stock."[5] (*Id.* ¶¶ 27, 39.) Plaintiffs also claim that they "purchased, purchased more of, or paid more for, these products than [they] would have had [they] known that the products were not hypoallergenic, as promised." (*Id.* ¶¶ 30, 42.) Plaintiffs assert that "[b]y deceiving consumers about the nature, quality, and/or ingredients of its products, Walmart is able to command a premium price, increasing consumers' willingness to pay and take away market share from competing products, thereby increasing its own sales and profits." (*Id.* ¶ 13.)

On the basis of these facts, Plaintiffs filed a seven-count complaint on May 18, 2021, alleging claims for breach of express warranty; unjust enrichment; unfair and deceptive acts and practices under California's Consumers Legal Remedies Act; California's False Advertising Law; California's Unfair Competition Law; Pennsylvania's Unfair Trade Practices and Consumer Protection Law; and breach of contract. (Doc. 1.) Following a motion to dismiss, Doc. 24, Plaintiffs amended their complaint on September 10, 2021, setting forth the same claims. (Doc. 32.) On September 24, 2021, Walmart filed the instant motion to dismiss the complaint, accompanied by a supporting brief. (Docs. 36, 37.) Plaintiffs filed a brief in

---

[5] Brito-Munoz also claims that she would repurchase these products in the future "if there are no other available options due to store stock." (Doc. 32, ¶ 32.)

opposition on October 15, 2021.  (Doc. 40.)  Walmart timely filed a reply brief.  (Doc. 43.)  Accordingly, the motion is ripe for disposition.

## STANDARDS OF REVIEW

### A. 12(b)(1) Motion to Dismiss

In determining whether it has subject-matter jurisdiction, the court must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)).  Rule 12(b)(1) challenges may be "facial" or "factual."  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891).  Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

5

the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Walmart presents a facial attack on jurisdiction. Thus, the court will "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891).

### B. 12(b)(6) Motion to Dismiss

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Under Article III of the United States Constitution, federal courts are constrained to resolve only "Cases" and "Controversies."[6] U.S. CONST. art. III, § 2, cl. 1. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). Ensuring a plaintiff has Article III standing "'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). As such, the court has "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable

---

[6] While Plaintiffs present state law claims in this case, "[f]ederal courts are not at liberty to opine on state law absent Article III jurisdiction." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 284 n.8 (3d Cir. 2018). Thus, the court's standing analysis is applicable to all of Plaintiffs' claims.

to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). When standing is challenged at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). An injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). A particularized injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. In addition, the plaintiff "bears the burden of showing that [s]he has standing for each type of relief sought." *Summers*, 555 U.S. at 493.

"In the context of a putative class action lawsuit, '[t]he standing inquiry does not change.'" *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2016 U.S. Dist. LEXIS 168535, at *6 (D.N.J. Dec. 5, 2016) (quoting *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d. 451, 461 (D.N.J. 2005)). In other words, "a predicate to [a plaintiff's] right to represent a class is [her] eligibility to sue in [her] own right. What [she] may not achieve [herself], [she] may not accomplish as a representative of a class." *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). Indeed, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." *Hayes v. Wal-Mart*

8

*Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

In this case, Plaintiffs allege injury because they paid a sum of money for a product that was not as represented; paid a premium price for a product that was not as represented; were deprived the benefit of the bargain because the falsely labeled products they purchased were different from what Walmart warranted; and were deprived the benefit of the bargain because the falsely labeled products they purchased had less value than what was represented. (Doc. 32, p. 36.) Specifically, Plaintiffs take issue with an assortment of Walmart's various personal care products which are labeled as "hypoallergenic" and/or "tear-free" despite containing ingredients that Plaintiffs assert are undeserving of these labels. Plaintiffs argue that their injury occurred at the time they purchased these products because "they paid more for Walmart's products than they would have had they known the products were not hypoallergenic as represented." (Doc. 40, p. 29.)

Thus, Plaintiffs' alleged injuries are purely economic.[7] In essence, the court gathers that Plaintiffs are claiming economic injury under two theories: benefit of

---

[7] Indeed, Plaintiffs have explicitly argued that they are not pursuing their claims in the context of a personal injury suit. (Doc. 40, p. 14 ("Walmart misses the fact that this is a false advertising suit, not a personal injury suit.").) Therefore, Plaintiffs do not claim that any of the Walmart brand products that they purchased caused any type of allergic reaction or other physical injury when used by themselves or their children.

9

the bargain and premium price.[8]  To remedy these alleged injuries, Plaintiffs seek monetary, declaratory, and injunctive relief as well as restitution.[9]

The Court of Appeals for the Third Circuit has held that economic injury is one of the paradigmatic forms of injury-in-fact.  *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).  Thus, "[s]tanding always should exist to claim damages, unless perhaps the theory of damages is totally fanciful."  *Id.* (quoting Wright & Miller, Federal Practice and Procedure, § 3531.4, at 847 n.7 (2005 Supp.)).  However, this does not mean that merely because Plaintiffs frame their damages as economic the court is required to adopt this characterization at face value.  *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 886 (3d Cir. 2020) (requiring plaintiff to "allege[s] facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture," rather than accepting plaintiff's characterization of her

---

[8] The benefit of the bargain theory may allow for recovery where the plaintiff "bargained for a product worth a given value but received a product worth less than that value.  The economic injury is calculated as the difference in value between what was bargained for and what was received."  *In re Johnson & Johnson*, 903 F.3d at 283.  The premium price theory may allow for recovery where the defendant "unlawfully advertised its product as being 'superior' to others.  Applying this approach, economic injury is calculated as the unfair 'premium' that the plaintiff was unlawfully induced to pay."  *Id.*

[9] The court is obligated to "consider [Plaintiffs'] standing as to each remedy alleged, mindful of our task to 'examine the allegations in the complaint from a number of different angles to see if [Plaintiffs'] purported injury can be framed in a way that satisfies Article III.'"  *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 886 (3d Cir. 2020) (quoting *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 479 (3d Cir. 2018); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 197 (3d Cir. 2016)).

damages claim); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 287–88 (3d Cir. 2018) (recognizing that while a plaintiff is not "required to allege the exact value of her economic injury at the pleading stage[,]" she "must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least some economic injury").

### A. Monetary Damages

In order to allege that Plaintiffs have suffered an economic injury as a result of merely purchasing Walmart's products which they have consumed, Plaintiffs "must allege facts that would permit a factfinder to determine that the economic benefit [they] received in purchasing the [product] was worth less than the economic benefit for which [they] bargained." *In re Johnson & Johnson*, 903 F.3d at 285. It is insufficient "to simply allege that, although [Plaintiffs] purchased [hypoallergenic products] at a given price, they later wished they had not done so." *Id.* at 288.

Plaintiffs' amended complaint reads more like after-the-fact buyers' remorse than genuine economic injury. Indeed, Plaintiffs fail to allege that Walmart's hypoallergenic products did not provide them with an economic benefit that was worth less than what they bargained for. Based on the allegations in the amended complaint, the court gathers that Plaintiffs purchased these products both for their

intended use and in the hope that they would not cause an allergic reaction in themselves or their children. There is no allegation that the products did not perform as they were intended, i.e., that the Walmart brand baby wipes, lotion, or other personal care items purchased by Plaintiffs did not serve to clean or otherwise care for themselves or their children. Likewise, Plaintiffs do not allege that they or their children developed an allergy or that any of the ingredients that they hoped or expected were not included in these products otherwise caused a physical injury. Thus, for all practical purposes, it appears that the products Plaintiffs purchased and consumed lived up to their expectations.

Construing the amended complaint generously, Plaintiffs contend that Walmart's allegedly mislabeled hypoallergenic products are unsafe or contain dangerous ingredients that they would not expect in a hypoallergenic product; however, Plaintiffs' own allegations in the amended complaint "require us to conclude that the [products they] received [were], in fact, *safe as to* [*them*]." *In re Johnson & Johnson*, 903 F.3d at 289 (emphasis in original). As previously stated, Plaintiffs do not allege that they, or their children, suffered from allergic reactions or any other physical injury after using the products, nor did they allege that they were at risk of developing future allergies as a result of using Walmart's products. Plaintiffs' arguments that Walmart's hypoallergenic products are "unsafe *as to others* are not relevant to determining whether" Plaintiffs have standing

12

themselves. *Id.* (emphasis in original) (citing *Lujan*, 504 U.S. at 563 (1992) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.")).

Moreover, the amended complaint contains no allegation that Walmart brand hypoallergenic products were marketed as "superior" to other Walmart brand products without the hypoallergenic label, or that products not labeled as hypoallergenic were less expensive than those with the hypoallergenic label.[10] Indeed, it would require speculation to conclude from the allegations in the complaint that Walmart products not labeled hypoallergenic are less expensive.

In sum, although Plaintiffs characterize their purchases of Walmart brand hypoallergenic and/or tear-free products as economic injuries for which they are entitled to relief, they have failed to allege that the economic benefit they received from these products was anything less than the price they paid. In short, they

---

[10] The court notes that Brito-Munoz's "desire to continue purchasing [Walmart's hypoallergenic products] is not conditioned on the [products] being sold at a discounted price." *In re Johnson & Johnson*, 903 F.3d at 289. Rather, she hinges her future purchases of Walmart's products on the availability of other unidentified products sold by Walmart. "In the absence of that condition, we would be hard-pressed to presume that [Brito-Munoz] wishes to continue to buy [Walmart's hypoallergenic products] at anything other than its current market price, *i.e.*, the very price she has repeatedly paid for the product" every two months for an undetermined amount of time. *Id.* Therefore, it is also a stretch to state that Brito-Munoz did not receive the benefit of her bargain when she purchased these products or that she would not have paid as much for them if she knew the nature of their ingredients since she has not expressed a desire to cease purchasing these products in the future regardless of their price.

received the benefit of their bargain and they have failed to allege facts that would indicate that they paid a premium for these hypoallergenic and tear-free products.

### B. Plaintiffs Lack Standing to Pursue Declaratory and Injunctive Relief.

Plaintiffs also seek declaratory and injunctive relief in this case. Therefore, in addition to Article III's standing requirements, they bear the burden of establishing that they are "'likely to suffer future injury' from the defendant's conduct." *In re Johnson & Johnson*, 903 F.3d at 292 (quoting *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)); *see also Drenth v. Boockvar*, No. 1:20-cv-829, 2020 U.S. Dist. LEXIS 148436, at *22 (M.D. Pa. Aug. 18, 2020) ("Declaratory relief . . . is inappropriate when the allegedly unlawful conduct is entirely in the past.") (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)). In putative class actions, at least one named plaintiff must satisfy this future injury requirement. *McNair*, 672 F.3d at 223 (citations omitted).

Plaintiffs assert that they have alleged a future injury on behalf of the putative class because Plaintiff Brito-Munoz claims that she "may [still] purchase Walmart's products in the future if there are no other available options due to store stock."[11] (Doc. 32, ¶ 32.) However, the court finds that Brito-Munoz's contention

---

[11] Plaintiff Williams does not allege a similar desire to repurchase Walmart's hypoallergenic and/or tear-free products. Thus, based on the amended complaint, the only potential class representative who could satisfy the future injury requirement to seek declaratory or injunctive relief is Brito-Munoz.

that she *may* be harmed by a future purchase of Walmart brand hypoallergenic products, particularly a purchase contingent upon future stocking of Walmart's stores, "is far too speculative to justify injunctive relief." *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 400 (M.D. Pa. 2019) (citing *McNair*, 672 F.3d at 224–25). Brito-Munoz's vague allegation that "store stock" may impact her decision to repurchase Walmart brand hypoallergenic products is not the sort of likely future harm that Article III standing requires.

Moreover, the law presumes that individuals "act rationally[] in light of the information they possess." *McNair*, 672 F.3d at 225. "When an individual suffers an injury and subsequently becomes aware of the cause of that injury, the law affords that individual the dignity of assuming that they will not act in a manner which results again in the same injury." *Silva*, 416 F. Supp. 3d at 400 (citing *In re Johnson & Johnson*, 903 F.3d at 292–93; *McNair*, 672 F.3d at 225 & n.13). To suffer the same injury alleged in this case from a future purchase, Brito-Munoz would have to ignore her knowledge and experience regarding Walmart's labeling practices despite filing this lawsuit in which she has clearly identified her discontent. *See McNair*, 672 F.3d at 225 n.15. "In short, [Brito-Munoz] ask[s] us to presume [she] will be fooled again and again. . . ." *Id.* The court declines to make this assumption, and will accordingly grant the motion to dismiss Plaintiffs'

claims for declaratory and injunctive relief for failure to establish a future injury that is not speculative or contingent.

### C. Plaintiffs Lack Standing to Pursue Restitution

In addition to seeking monetary damages, Plaintiffs seek disgorgement of Walmart's revenues and profits based on a theory of unjust enrichment. However, Plaintiffs' amended complaint contains only conclusory allegations in support of their claim for restitution. Plaintiffs allege that "[a]s a result of Walmart's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Falsely Labeled Products, Walmart was enriched at the expense of Plaintiffs and the other members of the Class through the payment of the purchase price for Walmart's Falsely Labeled Products." (Doc. 32, ¶ 152.)

This statement is nothing more than a conclusory assertion which is inadequate to provide Plaintiffs with Article III standing. *See In re Johnson & Johnson*, 903 F.3d at 291 (holding that conclusory assertions are insufficient to convey Article III standing). As explained above, in order to seek monetary damages, Plaintiffs must do more than simply characterize their purchases as economic injuries. The same rationale holds true for their restitution claims. Plaintiffs cannot meet Article III's requirements simply by asserting that Walmart has been enriched at Plaintiffs' expense.

Plaintiffs' conclusory assertions are further weakened by Brito-Munoz's alleged plan to purchase Walmart's hypoallergenic products in the future despite her concerns about their ingredients. *See In re Johnson & Johnson*, 903 F.3d at 291 ("If Estrada herself wishes to purchase Baby Powder whether or not she knows of those health risks, why would the same not hold true for other consumers?  And if other consumers were to purchase Baby Powder whether or not they were warned of the alleged health risks, how did Johnson & Johnson earn unlawful profits by failing to offer such warnings?  Estrada's two conclusory assertions provide us not even a hint as to how we might answer these basic questions.").

In sum, Plaintiffs' restitution claims are based on nothing more than mere conjecture.  They plead no facts upon which a factfinder could conclude that Walmart has been able to sell more products due to the hypoallergenic label than it could have if it simply removed the hypoallergenic label.  We therefore conclude that Plaintiffs lack standing to seek relief in the form of restitution.

In light of Plaintiffs' failure to establish standing as to any form of requested relief, the court is compelled to dismiss this case for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendant, Doc. 36, will be granted.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 10, 2022